Amneal Pharmaceuticals LLC Good morning, your honors. May it please the court. The district court below error in the Dr. Reckitt. Let's start off as a preface for this. There's obviously an overlap between this case and the earlier case. In the district court here, I understand, adopted Judge Stark's claim construction. So do you have anything to add to the other side's argument with respect to claim construction? That's what I wanted to go to right away, Judge Frost. Amplifying a couple of comments that Mr. Nash made before. First, on the section of the specification of the 0322 specification, the new language regarding a matrix having two portions, I want to note that in our case, the Amneal case, the Amneal's expert, Dr. Gemeinhart, agreed with the interpretation of that section that it discloses in a matrix, a sustained release formulation itself, can have two portions, an IR and an SR portion. I'd also like to point to a couple of other changes in the 0322 specification. There's significant new disclosure in the 0322 patent. One, at column 21, lines 40 to 50, the spec says for the 0322 patent, the sustained release formulation alone may be formulated to mimic the blood serum profile of, and then it refers to mucinix. And mucinix is the comparative product that is referenced in the 0322 patent claim. So it clearly says a sustained release formulation alone, just a non-layered matrix tablet, can have the PK requirements that are called by that claim. And similar language is repeated in the 0322. Sorry, what are you, what column? Oh, sorry, Your Honor. Column 21, lines 40 to 50 of the 0322 patent, that's new, new disclosure. Column 21, what lines? Lines 40 to 50. So really, I guess you would start at maybe 42. Yeah, that would be it. I was looking at the wrong patent. Okay. Sorry, if you really start at line 42, it says the sustained release formulation alone, or in combination with an immediate release component, may be formulated to mimic the blood serum profile of glyphenosine, et cetera, et cetera, and then it refers to mucinix. Mucinix is the comparative product that's referenced in the claims of the 0322 patent. And similar language is found again in 0322 patent at columns 13, lines 23 to 30. This is an important difference between the 0322 spec and the 252 spec. They changed the disclosure to clearly show that a matrix tablet, sustained release formulation, can have two portions. And Dr. Gemmeimer admitted that's what those sections say. I guess I don't understand. Okay, I understand you're telling me that this new language is added. It's not crystal clear to me that it makes a difference, but even if that language theoretically makes a difference, claims one still requires two portions, two portions, not one portion. It's not entirely SR or entirely IR. Claim one requires a first portion and a second portion. So what am I missing? Your Honor, it does say two portions in the claims, but it says in the spec. Not just two portions. A first portion, which is immediate release form, and a second portion, which is a sustained release form. So you pointing me to something in the spec that talks about how something can be 100% sustained release doesn't seem to me has any relevance to claim one. No, because what I'm missing, I missed something. Yes, Your Honor. At column four, lines 12 to 17, it says that a matrix, the sustained release formulation itself, can have an IR portion and an SR portion in it. So you can have two portions in a non-layered product. That's the new disclosure in the 032 patent. I'm sorry. So column four says, but I don't understand the column 21 and the other one that you pointed to. The claim itself requires two portions. Yes. Yes, Your Honor. A portion of glyphosate in immediate release form and a portion in sustained release form. You've got to have two releasing portions. And that's what you have. You can have that in a sustained release formulation. That's what column four, lines 12 to 17 says, is you can mix the IR and SR portions in a single matrix. A single matrix. A single matrix can have. But the claim language talks about a first portion and a second portion. So are you suggesting that this language reads out a first portion and a second portion? No, no, no. No, Your Honor. I'm saying that this language in the spec, this new language in column four, lines 12 to 17, says that a non-layered tablet can have those two portions that are required by the claim, the first and second portion. Well, that language is changed in the specification, but the claim language is the same. Well, the claim language is not exactly the same, Your Honor. The reference, if you look just at the first portion recitation and sustained and second portion recitation, I think you also need to look at the dependent claims. But this is sort of the same situation as court confronted in the trading technologies case. There you had a parent case and you had a CIP, and the parent claims used the word static during prosecution. The applicants characterized static in a way that limited those claims. The later specification added new description of static that changed the disclosure with respect to that, and the court held that the disclaimer from the first application did not apply there. So how, in your view, does the language that you were referring to in claim four change the language in the claim? The claim language is first portion for an immediate release and second portion in a sustained release. Right. So are you suggesting that this language takes out? Because the sentence you keep referring to kind of contrasts the same matrix portion or separate release portions, which are either compressed or mixed. So what are you saying the additional language in the spec where the language in the claim remains the same, how did it rewrite it? So the language in the spec, the new language here, says two portions can either be parts of the same matrix, non-layer tablet, or they can be separately manufactured and combined as, for example, in a bi-layer tablet or in a capsule with beads. Well, you missed one word. You said the same matrix. The column four language says the same matrix portion. Right. That's one portion, right? So how does that correspond to redefining the language in this? Does that read out in your view the claim language distinction between a first portion and a second portion? No, it does not, Your Honor. So you think they have to show separate portions? You have to show two releasing portions, that a portion of the glyphosate in the product releases immediately without any inhibition, and a portion of the glyphosate in the product releases in a sustained manner. Its release is sustained, inhibited in some fashion. And that was shown at trial. That was shown at trial. If I might move on to one other point. Why did you not change the claim language in the child patent? If you want the claim to say something different, why didn't you change the claim language? Why did we? Well, Your Honor, we did. You're arguing that the claim language, we should read the claim language differently because of these additions in the specification. I'm saying if you wanted us to actually look at the child patent in a different way in terms of scope, why didn't you change the claim language? A couple answers, Your Honor. First, we did. At the time we presented those claims that ultimately issued in the 032 patent, we added dependent claims that required discreteness to make clear that the broader independent claims were not limited to a product where the portions were discrete or, you know, physically distinct. That we did. The other thing is when we added those claims, we specifically pointed the examiner to the new disclosure in the spec saying a sustained release formulation alone can do what is called foreignness claims. And on two separate occasions we told the examiner these new claims are not limited to the bilayer tablet embodiment or the capsule with beads embodiment. You've got to remember there really are four embodiments disclosed in this specification. But you do agree that the independent claims are still almost identical? No, I wouldn't agree they're almost identical, Your Honor. You know, the 252 claims require comparison to a standard immediate release formulation. These claims were. You're nitpicking with Judge Reyna. They're identical in any meaningful way vis-a-vis the construction in Watson and the issues before this court. I mean, are there nitpicky differences between them? Yes. But I'm with Judge Reyna. I don't see the difference between the language used in this claim with regard to the two portions and the language that was considered by this court for the 252 patent in Watson. Okay. Well, the other difference I would point to, Your Honor, is the dependent claims here are much different than they were in the 252. You just mean claim three, right? Claim three and also claim seven. If you compare those to claims one and five respectively, the only thing they add to the base claims is the requirement that the portions be discreet. And that's a significant difference from what this court had in the Watson case where, in the Watson opinion, the court explained that there was no claim differentiation issue. I think there is here. The district court never in its opinion explained how you can have something that would infringe claim one but not claim three. There is no. As applied, as the district court. Yeah, but claim differentiation is a tool, but it's like the least preferred of all the claim construction tools. I mean, yes, it's a tool that we use, but in this case, you had a disclaimer vis-à-vis Watson, which arguably is pulled through to this child application. Claim differentiation has to give way. I just don't understand as a matter of law. Look, I know why you didn't change the claim language. The 032 was filed in 2003 and issued in 2010 and Watson was decided in 2011. So you didn't know at the time of the prosecution of the 032 that we were going to conclude vis-à-vis in Watson that this disclaimer definitely applied. So that's why you don't have greater clarity in these claims. I mean, I'm sure the company wishes it could go back in time and re-prosecute this differently in light of what now it knows from Watson. But I guess my question to you is, what should the legal standard be? There's a disclaimer in the parent. This is a CIP, but I'll be honest, most of what you point to in the spec I don't see pulled through to the claim, which still requires the first and the second portion. So what should the legal test be for your obligation to put the public on notice once you disclaim something in the parent that you are now recapturing it in the child? What should your legal obligation be? What should the test we use be? I think the test is really what was used in the trading technologies case. State the test. I don't care about the facts. Tell me the law. What should the law be? What is the obligation on the part of the patentee in a child application when the parent has a disclaimer to disavow the disclaimer? What's the obligation? I think you have to somehow communicate that you're seeking claims of a broader scope, and we did that. Do you think somehow communicate is good enough? Add a little confusion to the mixture once there's already been a determined disclaimer? Do you think that's enough, or do you think the patentee has to clearly and unmistakably reclaim once there's been a disclaimer? I think we did clearly and unmistakably reclaim. I'm not asking you what you did. I'm asking you what the legal test should be, because I don't think it is crystal clear in our law, and I don't understand you to be presenting a clear legal test. So I'm trying to figure out first what the law ought to be in this kind of scenario, and then I'll weigh it against your facts. I would not place it at clear and unmistakable, Your Honor. I'd place it where I put it, which is you need to signal that you're seeking claims of a broader scope. I can't. I wouldn't put it any higher than that, Your Honor. But if it is higher, I think we got there in this case because the spec changed. It specifically said two portions can be in one layer. The spec does, but the claims still require a first portion and a second portion, and that's the magic language that was viewed as causing them to have to be distinct. Right. I don't know what the difference between distinct and discrete makes. I'm having trouble making sense of that. You know, I keep coming back to the dependent claims as well. There were four embodiments in the spec, a matrix tablet, two bi-layer tablets, and a capsule with beads. The dependent claims specifically call for everything but the matrix tablet. There has to be some scope covered by the independent claims. It's not covered by the law. I know, but I have to tell you, for me, I think the patentee has the obligation to put the world on notice as to the scope of their claims. And if the patentee is clearly an unmistakably disavowed portion of claim scope in a parent, I think the patentee has the obligation to put the world clearly on notice of the scope of the claims to the child if they're trying to reclaim it. That's what I think. I mean, I think that's the only thing that makes sense under the law. The patentee shouldn't get to issue a patent that causes all of this litigation by doing it in a less than clear way. Is there any other questions? You've already frosted your rebuttal. Could I just go very quickly into the doctrine of equivalence? We did have... Sure, a couple minutes. Okay. Even if the claim construction stands, they think the court erred in three ways. One, finding there was no particularized testimony. I think that is clear. There is particularized testimony at 13.112 to 13.114 of the appendix on the function way result test, and also at 13.109 to 13.112 and 13.14 to 13.50 on insubstantial differences. Are these the same arguments that were advanced in Watson with respect to by equivalence? No, we never got the doctrine of equivalence in Watson because the court found there was a disclaimer. You're facing that same barrier here, aren't you? Well, no, neither district court found that there was a disclaimer, and we think for there to be a disclaimer there must be a clear statement of disclaimer or disavowal, and there was none in the 032 patent. The other two errors were the court appeared to rely on the absence of a disintegrant in the product. There's no requirement for a disintegrant in the immediate release portion, and the court appeared to apply and everything must release at once from the immediate release portion, and there's no requirement for that in the claims. Thank you. Will we start with you? Thank you. Now, as we've already spoken, there's obviously an overlap between this case and the previous case. It's not clear to me why there are two attorneys making an argument. You said you want to divide your time. Your Honor, the reason why there are two attorneys is that Dr. Reddy's, which is the company that I represent, was only sued on one of the two patents, the 032 patent. The 821 patent was only asserted against Amniel. So the division is that I'm going to address the 032 on behalf of both defendants, and Mr. Danieau is going to address the other patent on behalf of Amniel. We'll run the clock separately. Thank you, Your Honor. Your Honor, I'm not going to repeat much of what has been said. At least I'm going to try not to. Obviously, we think that Judge Stark and Judge Baum decided the claim construction correctly, and the starting point is a point that Your Honors have already made, which is that the language of the claims is identical in pertinent part to the language that you already construed in Watson. It talks about two portions, one in an immediate release form and one in a sustained release form. And to the question that was posed about whether there's a difference between form and formulation, I would point Your Honors to page 6032-304 of the appendix in our case, where Reckitt uses the terms interchangeably. This is a portion of the Markman brief from below where they made no distinction between those forms. The other point I'd like to make about the claims is that they contain two distinct requirements. One, and I think Judge Reyna, you noted this, one deals with dissolution. That's the CMAX and AUC limitations. The other part of the claim deals with what structures in the formulation, I'm sorry, what structures in the product produce those claimed PK parameters. And that's where the two portions language comes into play. And I think the problem with Reckitt's approach in this case is that they conflate those two elements. And what Judge Stark said, and I think this is a very good way of putting it, what he said was if you read the claims the way that Reckitt wants to read them, that you fail to give meaning to the two-portion limitation beyond what meaning is separately required by the claim limitations involving the release properties of the claimed drug product. So I think that's a fundamental problem with their position. The other things I'd like to direct your attention to that I believe- Claim three, what is your argument with regard to claim differentiation? Claim differentiation is a weaker doctrine and we can ignore it in this case. How does claim three differ from claim one? I certainly agree that it's a weaker doctrine and it can't overcome what I think is very clear, intrinsic evidence that supports Judge Stark and Judge Bum's claim construction. That said, I think that Judge Bum, the difference between our case and the Arbindo case, Judge Bum actually construed claim three, and she concluded that it introduces a spatial relationship into the claims. And to get to that, she relied on claim four, which depends from claim three, and I believe specifies a bilayer tablet. She could equally have looked at, I believe it's claims nine and ten, that talk about a coded core or a capsule with two sets of beads in it, sustained release and IR beads in it, respectively. But she concluded that claim three had a different scope than claim one, which I think avoids any argument on claim differentiation. I still don't understand what the different scope is. Well, there may not be any difference in scope. It may be an overlapping claim. But you said she concluded there was a difference in scope between claim one and claim three. I don't understand yet, from your argument, what that difference in scope is. The difference, which is a theoretical difference, because there's no example of it in the patent, and I think that's why it's difficult to understand, the difference is that claim one could encompass a combination of two portions, one an immediate release form and one a sustained release form, that was in some configuration other than the beads, the coded cores, and the bilayer tablet. So if one could – No, those are examples. I don't understand the difference between the word discrete. Those are examples of things that are, in fact, discrete. No problem. I agree with you there. But claim three is broader than any one of those examples. It says discrete. So isn't it the case that claim one has been read to contain two discrete portions also? Well, the language that Judge Stark used was distinct portions, but I agree it's the same difference as far as that goes. He specifically said, in fact, that there was no substantive difference between those words. As far as the difference in scope between claim three and claim one, I think that claim one could encompass two forms of guafenocin that were not in a particular spatial relationship. And I think the example that was given earlier, which is, again, a hypothetical example, is that you could essentially take two forms and simply compress them into a tablet. So it would be like the capsule in the sense that it has two different forms of guafenocin, but in the form of a tablet. So that would be one situation where you could argue that it wasn't covered by claim three, but it was covered by claim one. Now, the other point I'd like to address, Your Honors, unless, Judge Moore, you had any follow-up to that, is in the specification, the examples in the specification. And this is something that RECCIT relies on to say that the claims cover single-portion products. And in particular, they point to examples one and examples four, which are the only two examples in the patent of a single formulation, what the inventors call a sustained-release formulation. And what I want to point you to is the fact that the inventors in the patent specifically describe those examples as lacking an immediate-release blend. So they specifically say this is not a two-portion formulation. It does not have an immediate-release component. And that's significant, I think, because if you look at the patent, and this is in page 196 of the appendix, there is a chart at that point. It begins at line 25 of column 31, where they show what the dissolution, how the guafenicin releases from that single-formulation tablet. And if you look, it releases about 22 percent of its guafenicin in the first hour, which is the same burst effect that RECCIT argued below is the immediate-release component of our product. So the point I want to make is that the inventors' own words contradict that argument. The inventors specifically said, even though there's this burst effect, it has no immediate-release portion. Where is this dissolution chart? It is on page 196 of the appendix, Your Honor, beginning at line 25. This is in relation to formulation one of example four. I mean, you said you're addressing the 032, and your colleague is going to address the other patent. I mean, have you said anything that is distinct to the 032 that doesn't apply to the other patent? I haven't heard you say anything that is limited to one of the patents and not the other. Perhaps not, Your Honor. I'm not trying to address the 821 patent. I think there are other things in the 821 patent that add to the picture. One other thing I want to bring your attention to, and then I'll turn the floor over to Mr. Danio, and that is in the prosecution history. And I think if you look at what happened here, it confirms that Judge Stark and Judge Bum got the claim construction right. And specifically, I want to draw your attention to the fact that the examiner, I mean, these claims in the 032 patent originally started out as two-portion claims. They got a number of art-based rejections, and then the record canceled all the claims, and they substituted claims where they simply claimed a product containing that met the CMAX and AUC values in the claim. So it was a purely functional claim. And they got a 112 rejection. Interestingly, it was a claim that was even broader than the claim that they disclaimed in the parent application. The examiner came back and said, you can't have that claim. You haven't described for a person of ordinary skill what structure produces those PK values, the CMAX and the AUC values in the claim, and you've got to do that. And when they filed their amendment, which is when they added, they put back the two-portion language and they also added claim three, they did not say, they didn't say, you know, they identified the two portions as what produced those PK values. They didn't say, look at our single formulation values, look at our sustained release formulations. When they had the opportunity to do that, they didn't tell the examiner that you could get there from, you could get these PK values with a single formulation product. They specifically put back the two-portion language that was the same language that they had in the 252 application. The other point I'd like to make about that is that at the time they filed that amendment, which is where they added claim three, the examiner did not have the district court's decision in the Watson case, which is where this disclaimer argument and the word discreet first appeared. So when the examiner got this amendment, he would have no way of knowing that there was some hidden intent there to change the scope of the claim, such that he might have reconsidered the art that was asserted against sustained release formulations in the parent application. They didn't make any remarks to say we're claiming more broadly. When they filed the Watson decision two months after they filed the amendment, they didn't say this is in relation to the dependent claim. Please consider this as being a broader claim. You've used a portion of your friend's time. That's fine. It's up to you two to divide it, but do you want to sit down and let him speak? Yes, Your Honor, I'll pass. We'll take off the two and a half minutes, which we're down to five minutes for you, sir. Good morning, Your Honors. May it please the Court. Just a couple of points on the Hakeem question, not the disclaimer. Sorry, the disclaimer issue, the standard of law that Judge Morey was talking about, is mentioned in the Hakeem case, which we cite in our brief. And according to this Court's precedent, there must be sufficiently clear statements saying that you are rescinding the disclaimer and revisiting those previously broader claims. None of that went on here. In fact, Your Honor, Judge Reno, you pointed to the similarities between the 252 and the patents in suit. During the 032 patent prosecution process, the applicants actually said that they were redrafting the claims to more closely parallel Claim 24 of the 252 patent. And that is Appendix 4697-4701. So they weren't moving away from the disclaimer. They were actually making their claims more closely aligned with the 252 patent. Now, if we go to the 821 patent prosecution, the same thing happened. In the 821 patent prosecution, the examiner rejected the claims based on Drost and Dansreau. And the applicant noted in their response, this is the same prior art we addressed in the parent application. And they made the same arguments. They said Drost is a formulation that does not have two portions of bufenicin. It does not have an immediate release formulation portion and a sustained release portion. So they got around Drost for the same reasons they got around that reference in the 252. Same thing with Dansreau. Dansreau does disclose an invention with two portions, but it's a different PK profile. So again, these patents were aligned during the prosecution, and there was no disavowal. But as counsel mentioned earlier, Judge Stark didn't rely on disclaimer. He looked at the entirety of the intrinsic evidence, relying primarily on the plain language. As Your Honor notes in the 032, if you look at the 821, it's crystal clear. It requires an immediate release formulation and a separate sustained release formulation. There must be two formulations. So you don't need to go farther. But what the patentee did, too, is they distinguished between the inventive approaches in this case. You have sustained release formulations, and then you have formulations with two formulations. This was noted in this court's decision in Watson. There's a distinction between those two inventive approaches. So, Your Honor, if you look at, for example, the appendix at appendix 123, the patentee sets forward the two inventive approaches, sustained release, one formulation, products, and then two formulation products. And that's repeated then in the detailed description of the invention. And then there's a heading at the bottom of appendix 124. What's the line that you're reading from? You said 123? Yeah, this is an 821 patent, Your Honor. But this is the same structure of the patent as far as it's drafted with the 023 patent. And what was noted in the Watson court decision, there's a distinction. They distinguished between single formulation approach and two formulation approach. And that's picked up in the entirety of the specification, starting with the summary of the invention. The detailed description of the invention lays out the two headings there. You've got sustained release formulation in the 821 patent at appendix 124. And that goes on for several columns. And then you get to the description of the patent at column 11, which is the modified release product. And this is the section in the specification that talks about the two formulation approach, which is what they go ahead and claim. And as Judge Dyke mentioned in a footnote or observed in a footnote in the Watson decision, they describe these single formulation products. They just don't claim them. Because like you said, Judge Reyna, when they get to the claims, they drafted the claims with language that required two portions, two formulations. They just didn't draft the right claims. And as Judge Moore mentioned, perhaps they were just late in the game. And if you look at all of the examples, all of the examples of the two formulation products contain ingredients for an immediate release formulation and a sustained release formulation. So there are two formulations, not just one set of ingredients that are blended together to produce a single matrix, single formulation product. Thank you. Thank you, Your Honor. A couple of points, Your Honors. First, Ms. Huttner said, as I understood it, in response to a 112 rejection in the 032 prosecution, we didn't tell the examiner, look at our sustained release disclosure. That's not true, Your Honor. We expressly, in responding to that office action, we expressly pointed the examiner to new disclosure in the 032 specification, particularly paragraph 119. This is at appendix page 4093. That's the part that says a sustained release formulation alone can have the claim PK requirements. And in our remarks at 4697, in response to that, we said, look, the original claims are fully supported, and look at this paragraph of the specification. So we did do that. Secondly on that, we did cite to the examiner the Parago Courts claim construction for the 252 patent, which had embraced the discrete part of a product construction. And along with that, we cited to the examiner all of the briefing underlying that. So the examiner knew what our position was on portions. The other things I'd like to say about that amendment and that response, we expressly informed the examiner in a subsequent July 13, 2010, interview, and in August 9, 2010, amendment, that the claims were not limited to the bilayer tablet or the capsule embodiments that the Watson panel had found. That's what discrete means. The other point I wanted to say, Mr. Daniel referred to statements in one of our amendments that new claims that were added during the 032 prosecution more closely paralleled the 252 claims. Those statements were not made with respect to the claims that ultimately issued in the 032 patent. They were made with respect to different claims. Okay. Time has expired. Okay. Thank you, Your Honor. We have your argument. We thank both sides.